UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
VICTOR DIDIA,                                    Index Number:

                Plaintiff,

  -v-                                           **COMPLAINT**
                                                                                                                       **WITH JURY DEMAND**

PELOTON INTERACTIVE INC. and SAQUIB BAIG

                Defendants.
------------------------------------------------------------------X

       Plaintiff, VICTOR DIDIA ("Mr. Didia" or the "Plaintiff") by and through his attorney, Louis M. Leon, Esq. of MIZRAHI KROUB LLP, complaining of PELOTON INTERACTIVE INC. ("Peloton") and SAQUIB BAIG ("Mr. Baig") (all together as "Defendants"), alleges as follows:

## NATURE OF THE CASE

       1.    This is a civil action for damages and equitable relief based on Defendants' violations of Plaintiff's rights guaranteed to him by the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), 42 U.S.C. § 1981 ("Section 1981"), and the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, as amended, including The Local Civil Rights Restoration Act, effective October 3, 2005, as well as Local Laws 1, 34, 35, 36, 37, 38, and 40 of 2016 ("NYCHRL").

       2.    Mr. Didia claims that Defendants interfered with his right to take pregnancy-related leave, including FMLA leave; discriminated against him for requesting leave; retaliated against him for exercising his rights under the FMLA and for otherwise engaging in protected activity; discriminated against him on the basis of his race, ethnicity and religion (Jewish); retaliated against him for reporting discrimination on the basis of race, ethnicity and religion, and for otherwise engaging in protected activity; and unlawfully terminated his employment.

1

**THE PARTIES**

3. The Plaintiff is an individual who is a resident of West Long Branch, New Jersey.

4. At all times herein pertinent, Plaintiff was an "employee" of the Defendants and each of them within the meaning of the FMLA, Section 1981, and NYCHRL.

5. At all times herein pertinent, Plaintiff was a "person" within the meaning of the FMLA, Section 1981, and NYCHRL.

6. Defendant Peloton Interactive Inc. ("Peloton") is a domestic corporation incorporated under the laws of the State of Delaware with its principal place of business located at 441 Ninth Avenue, Sixth Floor, New York, NY 10001.

7. Defendant Saquib Baig is the Chief Accounting Officer for Peloton. Mr. Baig exercised supervisory authority over Plaintiff and was involved in decisions affecting Plaintiff's terms and conditions of employment, including his termination.

8. At all times herein pertinent, Defendants were "employers" as defined by the FMLA, Section 1981 and NYCHRL, and upon information and belief had fifty (50) or more persons in their employ at all times herein pertinent.

9. Further, upon information and belief, Defendant Baig was an "employer" within the meaning of the FMLA, Section 1981 and NYCHRL by virtue of his supervisory authority over Plaintiff and his participation in the conduct alleged herein.

**JURISDICTION AND VENUE**

10. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the FMLA and 42 U.S.C. § 1981. The Court has supplemental jurisdiction over Plaintiff's related claims arising under State, city and local law pursuant to 28 U.S.C. § 1367(a).

11. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as this action arises as Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000. The Court has supplemental jurisdiction over Plaintiff's related claims arising under State, city and local law pursuant to 28 U.S.C. § 1367(a).

12. Pursuant to 28 U.S.C. § 1391(b)(2), venue is appropriate in this Court as all Defendants are located in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, specifically in Manhattan, New York.

13. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as all events giving rise to the claims occurred within the Southern District of New York, specifically at the Peloton Interactive Inc. Headquarters located at 441 9th Avenue in Manhattan, New York.

## MATERIAL FACTS

14. Victor Didia worked as a Senior Manager in NetSuite engineering at Peloton Interactive, LLC, from May 2019 through August 8, 2025. Mr. Didia held a critical leadership role, overseeing engineers and working cross-functionally with multiple teams.

15. In October 2024, Nadav Julius, a Jewish individual and one of Mr. Didia's direct reports, expressed serious concerns about his safety amidst the rise of Anti-Semitism following the October 7 terrorist attack in Israel.

16. In light of these concerns, Mr. Julius asked Mr. Didia if he could work remotely, as many other Peloton employees did at the time. Mr. Didia, who is also Jewish, approved the request and elevated it to his supervisors, Saquib Baig and Brian Eng, for final approval.

17. In November 2024, during a meeting about Mr. Julius' request, Saquib Baig, a Muslim man, angrily ridiculed Mr. Julius and all other Jewish employees at Peloton who expressed

concern about their safety, stressing "I'm a Muslim, I was a Muslim in 9/11 – That was hard, you have it easy."

18.　　Although Mr. Didia was not present at the meeting, Brian Eng was present and quickly conveyed Mr. Baig's comment to him.

19.　　Taken aback by Mr. Baig's apparent antisemitism and blatant disregard for his team's safety concerns, Mr. Didia became very worried about his own safety at work.

20.　　Unfortunately, Mr. Didia was unable to move forward as he and his Jewish coworkers were repeatedly treated differently than their non-Jewish counterpart at work.

21.　　For instance, while Mr. Baig dismissed Mr. Julius' request to work remotely due to safety concerns, Mr. Baig allowed numerous non-Jewish employees to work remotely, signaling to Jewish individuals that they should not voice concerns about Antisemitism at Peloton.

22.　　Similarly, Mr. Didia and other Jewish employees were repeatedly shut down while attempting to form an Employee Resource Group (ERG) at Peloton, despite the existence of several other ERGs at Peloton, including groups for Black, Latino and Asian employees, as well as employees who identify as veterans.  To justify the decision, members of management stated, "Jewish is not an ethnicity – It's a religion."  However, Peloton continued to form ERGs for other nonethnic groups, again demonstrating their intentional discriminatory treatment of Jewish people.

23.　　In or around January 2025, Peloton's Human Resources ("HR") department launched an investigation into Brian Eng, the VP of Technology & Digital Transformation at the company.  Because Mr. Didia worked closely with Brian Eng, an HR representative interviewed Mr. Didia as part of the investigation.

24.　　Although the HR representative did not state the subject of the investigation, they asked Mr. Didia if he was aware of any inappropriate comments made by any senior leader.  In

4

response, Mr. Didia complained to HR about Mr. Baig's comments at the November 2024 meeting and antisemitism at Peloton.

25. Approximately two weeks later, an HR representative asked Mr. Didia to meet again to further discuss Mr. Baig's comments. During the meeting, the representative downplayed the situation, and told Mr. Didia that HR would address the incident "internally."

26. A week or two later, HR emailed Mr. Didia to "close out" the matter, but provided no details about the investigation or any changes to be implemented. Moreover, Mr. Baig faced no disciplinary action and was even subsequently promoted, again demonstrating Peloton's discriminatory animus towards its Jewish employees.

27. After Mr. Didia's meetings with HR, Mr. Baig became cold and distant toward Mr. Didia, and began to avoid him. Although Mr. Baig created an uncomfortable work environment, Mr. Didia attempted to move forward.

28. In or around October 2025, Mr. Didia and his wife learned that she was pregnant. Approximately one month later, Mr. Didia informed his managers, including Saquib Baig, that his wife was pregnant and that he would be submitting a request for parental leave.

29. On March 6, 2025, Mr. Didia properly and timely submitted his request for FMLA leave through the Company's third-party benefits portal, Metlife. Later that month, Mr. Didia's supervisors internally approved his proposed leave while Metlife processed his paperwork.

30. On June 16, 2025, Mr. Didia's request was approved and encompassed eighteen (18) weeks of leave, which was scheduled to commence on May 21, 2025, and end on September 23, 2025.

31. Mr. Didia's child was born on May 20, 2025, and Mr. Didia began his leave the following day.

32. On May 23, 2025, Kelly King, a representative from Peloton's People Operations team, sent Didia a congratulatory email confirming his leave. The email explicitly stated that Mr. Didia's scheduled return to work date would be September 24, 2025.

33. Throughout his leave, Mr. Didia remained engaged with his professional responsibilities. For instance, on June 9, 2025, Mr. Didia proactively reached out to VP of Finance Transformation and Technology, Tim Hannan, to ensure that Mr. Hannan had everything he needed from Mr. Didia in advance of his team's upcoming performance reviews. Mr. Hannan thanked Mr. Didia for checking in and assuring him that nothing was required while he was on leave.

34. On August 8, 2025, less than three months into Mr. Didia's protected leave and more than a month before his scheduled return date, Peloton terminated Mr. Didia's employment.

35. Peloton characterized Mr. Didia's termination as part of a broader reduction in force for cost-cutting purposes. However, Mr. Didia held a critical leadership position and was the only member of the entire NetSuite engineering team who was laid off.

36. Despite Peloton's allegations that the layoff was part of a broad cost-cutting measure, it is apparent that the termination was both discriminatory and retaliatory as it occurred during Mr. Didia's protected parental leave and on the heels of Mr. Didia's complaints of discrimination and a hostile work environment.

37. Mr. Didia was unlawfully discharged for exercising his rights under the FMLA and in retaliation for engaging in protected activity, in violation of the FMLA, Section 1981 and NYCHRL.

**FIRST CAUSE OF ACTION - AGAINST ALL DEFENDANTS**
**INTERFERENCE WITH RIGHTS UNDER THE FMLA**

38. Plaintiff repeats, reiterates, and reasserts all allegations contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

39. At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the FMLA, in that he: (a) was employed by Defendants for at least twelve (12) months; (b) worked at least 1,250 hours during the twelve (12) month period immediately preceding the commencement of the leave; and (c) was employed at a worksite where Defendants employed fifty (50) or more employees within seventy-five (75) miles of that worksite.

40. At all times relevant herein, Plaintiff's wife had a "serious health condition" within the meaning of 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.113, namely pregnancy and childbirth, which entitled Plaintiff to FMLA leave.

41. Plaintiff properly requested FMLA leave information and FMLA leave from Defendants on multiple occasions, including on March 6, 2025.

42. Upon information and belief, Defendants had sufficient notice of Plaintiff's need for FMLA leave based on his wife's pregnancy, his explicit requests for FMLA leave information and leave itself, and his communications regarding his intention to take leave.

43. Despite Plaintiff's eligibility for FMLA leave and his proper requests for such leave, Defendants interfered with, restrained, and denied Plaintiff's rights under the FMLA by: (a) failing to provide Plaintiff with required FMLA information after he requested it; (b) failing to properly process his FMLA leave requests; (c) discouraging his exercise of FMLA rights; and/or (d) terminating his employment approximately two weeks after she requested FMLA leave, thereby preventing him from exercising his FMLA rights.

44. Defendants' conduct prevented Plaintiff from exercising his rights to take FMLA leave for his wife's pregnancy and childbirth.

45. By engaging in such interference, Defendants willfully violated the FMLA.

46. As a proximate result of Defendants' interference with Plaintiff's rights under the FMLA, Plaintiff has suffered and continues to suffer substantial losses, including loss of past earnings, loss of future earnings, loss of other employment benefits, and loss of the opportunity to take FMLA leave, in an amount to be proved at trial.

47. As a further proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

48. Plaintiff is entitled to all relief available under 29 U.S.C. § 2617, including but not limited to: (a) damages for lost wages and benefits; (b) liquidated damages; (c) reinstatement and/or front pay; (d) compensatory damages; and (e) reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION - AGAINST ALL DEFENDANTS**
**FMLA RETALIATION**

49. The Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

50. Plaintiff engaged in activity protected by the FMLA by requesting FMLA leave information and FMLA leave from Defendants on multiple occasions, including on March 6, 2025.

51. Defendants were aware of Plaintiff's protected activity as Plaintiff made his requests directly to the company's HR department and Defendant Saquib Baig, who was a supervisor with authority over Plaintiff's employment.

52. Plaintiff suffered an adverse employment action when Defendants terminated his employment on August 8, 2025.

53. There is a causal connection between Plaintiff's protected activity and his termination, as evidenced by: (a) the close temporal proximity between Plaintiff beginning his

FMLA leave on May 21, 2025, and his termination less than three months later on August 8, 2025; (b) the fact that Plaintiff was terminated while on protected leave and (c) the absence of any legitimate, non-retaliatory reason for Plaintiff's termination.

54. Defendants' termination of Plaintiff's employment was in retaliation for his exercising or attempting to exercise his rights under the FMLA.

55. By engaging in such retaliation, Defendants willfully violated the FMLA.

56. As a proximate result of Defendants' retaliation against Plaintiff for exercising his protected rights, Plaintiff has suffered and continues to suffer substantial losses, including loss of past earnings, loss of future earnings, and loss of other employment benefits in an amount to be proved at trial.

57. As a further proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

58. Plaintiff is entitled to all relief available under 29 U.S.C. § 2617, including but not limited to: (a) damages for lost wages and benefits; (b) liquidated damages; (c) reinstatement and/or front pay; (d) compensatory damages; and (e) reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION - AGAINST ALL DEFENDANTS
### RACE DISCRIMINATION AND HOSTILE WORK ENVIRONMENT UNDER
### 42 U.S.C. § 1981

59. Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

60. Defendants discriminated against Plaintiff on the basis of his race (Jewish) in violation of 42 U.S.C. § 1981 by subjecting him to discriminatory terms and conditions of employment, including but not limited to, subjecting him to disparate working conditions and

9

denying him the opportunity to work in an employment setting free of unlawful discrimination and harassment.

61. Defendants discriminated against Plaintiff on the basis of his race, in violation of 42 U.S.C. § 1981, by creating, fostering, condoning, accepting, ratifying, and/or otherwise failing to prevent or to remedy a continuous and pervasive hostile work environment that included, among other things, severe harassment of Plaintiff because of his race.

62. The hostile work environment includes, but was not limited to the November 2024 incident in which Defendant Baig dismissed and ridiculed the Jewish coworkers' concerns about antisemitism.

63. The hostile work environment further included Human Resources ignoring Plaintiff's concerns about antisemitism and Defendant Baig and ignoring Plaintiff after he reported race discrimination.

64. The harassment Plaintiff endured was unwelcome and was based on Plaintiff's race as a Jewish individual.

65. The harassment was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

66. The harassment is imputable to Defendants as Plaintiff's employer and as supervisors and managers with authority over Plaintiff, including Defendant Saquib Baig who held an executive position at the Company.

67. Defendants knew or should have known of the harassment and discrimination against Plaintiff based on his race, as Plaintiff reported the conduct to the Human Resources department.

68. Despite having actual knowledge of the harassment, Defendants failed to take prompt and adequate corrective action to prevent or remedy the hostile work environment.

69. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of 42 U.S.C. § 1981, Plaintiff has suffered and continues to suffer substantial economic losses, including lost wages and benefits, constructive interference with her employment, and potential future losses, in an amount to be proved at trial.

70. As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer severe emotional distress, humiliation, mental anguish, inability to sleep, fear, and other incidental and consequential damages in an amount to be proved at trial.

71. Defendants have acted with malice and reckless indifference to Plaintiff's federally protected rights.

72. Therefore, Plaintiff is entitled to all remedies and relief afforded by 42 U.S.C. § 1981, including but not limited to, compensatory damages, punitive damages, attorneys' fees and costs, and injunctive relief.

### FOURTH CAUSE OF ACTION - AGAINST ALL DEFENDANTS
### RETALIATION UNDER 42 U.S.C. § 1981

73. Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

74. Plaintiff engaged in protected activity under Section 1981 by complaining about race discrimination and harassment to management, including Defendants.

75. Plaintiff's protected activity included, but was not limited to, complaining about Defendant Baig's comment about Jewish employees during the November 2024 meeting, and complaining about the discriminatory treatment Plaintiff suffered on the basis of his race.

76. Defendants knew of Plaintiff's protected activity, as Plaintiff reported the discrimination and harassment to the Human Resources department.

77. Following Plaintiff's complaints, Defendants took adverse actions against Plaintiff, including continuing and escalating the hostile work environment and dismissing his complaints.

78. Following Plaintiff's complaints to Defendants about the discriminatory conduct, the retaliation systematically worsened rather than improved.

79. After Plaintiff complained about Saquib Baig's comment during the November 2024 meeting, Defendants dismissed his complaints, minimized the severity of the incident, and forced him to continue working with the person discriminating against him, thereby perpetuating the retaliatory hostile work environment.

80. There was a causal connection between Plaintiff's protected activity and the adverse actions taken against him, as evidenced by the temporal proximity between Plaintiff's complaints and the escalating hostility from Saquib Baig, the company's dismissive response to his complaints, and the ongoing retaliatory harassment.

81. Due to Plaintiff's protected activity in complaining about race discrimination and harassment, Plaintiff has been subjected to the continuing hostile work environment and dismissive treatment of his complaints.

82. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of 42 U.S.C. § 1981, Plaintiff has suffered and continues to suffer substantial economic losses, including lost wages and benefits, constructive interference with his employment, and potential future losses, in an amount to be proved at trial.

83. As a direct and proximate result of Defendants' unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer severe emotional distress, humiliation, mental

anguish, inability to sleep, fear, and other incidental and consequential damages in an amount to be proved at trial.

84. Defendants have acted with malice or reckless indifference to Plaintiff's federally protected rights.

85. Therefore, Plaintiff is entitled to all remedies and relief afforded by 42 U.S.C. § 1981, including but not limited to, compensatory damages, punitive damages, attorneys' fees and costs, and injunctive relief.

### FIFTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
### RACE/ETHNICITY/RELIGION DISCRIMINATION UNDER NYCHRL

86. Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

87. The New York City Human Rights Law is to be construed liberally to accomplish its uniquely broad and remedial purposes, requiring only that Plaintiff be treated "less well" because of her race.

88. Defendants discriminated against Plaintiff on the basis of his race/ethnicity/religion (Jewish) in violation of NYCHRL by denying him the same terms and conditions available to non-Jewish employees, including but not limited to, subjecting him to disparate and inferior working conditions and denying him the opportunity to work in an employment setting free of unlawful discrimination and harassment.

89. Defendants discriminated against Plaintiff on the basis of his race/ethnicity/religion, in violation of NYCHRL, by creating, fostering, condoning, accepting, ratifying, and/or otherwise failing to prevent or to remedy a continuous and pervasive hostile work environment that included, among other things, severe harassment and discriminatory treatment of Plaintiff because of his race/ethnicity/religion

90. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of NYCHRL, Plaintiff has suffered and continues to suffer substantial economic losses, including lost earnings and benefits, constructive interference with his employment, and potential future losses, in an amount to be proved at trial.

91. As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer severe emotional distress, humiliation, mental anguish, inability to sleep, fear, and other incidental and consequential damages in an amount to be proved at trial.

92. Under NYCHRL, Plaintiff is entitled to uncapped compensatory and punitive damages.

93. Defendants have acted with malice or reckless indifference to Plaintiff's rights under NYCHRL.

94. Therefore, Plaintiff is entitled to all remedies and relief afforded by NYCHRL, including but not limited to, compensatory damages, punitive damages, civil penalties, attorneys' fees and costs, and injunctive relief.

## SIXTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS
## RETALIATION UNDER NYCHRL

95. Plaintiff repeats, reiterates, and reasserts all allegations contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

96. Defendants engaged in unlawful discriminatory practices in violation of NYCHRL by retaliating against Plaintiff for opposing discriminatory practices.

97. Plaintiff engaged in protected activity for complaining about discrimination.

98. Plaintiff complained to Human Resources about discrimination.

99. Plaintiff suffered an adverse employment action when Defendants terminated his employment on August 8, 2025.

100. There is a causal connection between Plaintiff's protected activity and his termination, as evidenced by the close temporal proximity between Plaintiff's complaints of discrimination and his termination.

101. As a direct and proximate result of the Defendants' actions, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

102. As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

103. Therefore, Plaintiff is entitled to all remedies and relief afforded by NYCHRL, including but not limited to, back pay, front pay, emotional distress, punitive damages and attorney's fees and costs, as well as any and all injunctive relief.

### SEVENTH CAUSE OF ACTION – AGAINST DEFENDANT BAIG AIDING AND ABETTING UNDER NYCHRL

104. Plaintiff repeats, reiterates, and reasserts all allegations contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

105. The NYCHRL provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so." N.Y.C. Admin. Code § 8-107(6).

106. Defendant Saquib Baig, as a supervisor with direct authority over Plaintiff, aided and abetted the unlawful discrimination and retaliation against Plaintiff in violation of the NYCHRL.

107. Defendant Saquib Baig was personally involved in the discriminatory conduct.

108. Defendant Saquib Baig violated NYCHRL by aiding, abetting, inciting, compelling, and/or coercing the discriminatory and unlawful conduct alleged herein.

109. As a direct and proximate result of Defendant Saquib Baig's actions, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

110. As a direct and proximate result of Defendant Saquib Baig's actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

111. Therefore, Plaintiff is entitled to all remedies and relief afforded by NYCHRL against Defendant Saquib Baig individually, including but not limited to, back pay, front pay, emotional distress, civil penalties, punitive damages, attorney's fees and costs, as well as any and all injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays judgment against the Defendants, and each of them:

1. Awarding back pay to Plaintiff in an amount to be proven at trial, representing all lost earnings from the date of termination through trial, including all wages, salary, bonuses, commissions, benefits (health insurance, retirement contributions, paid time off), and other compensation Plaintiff would have received but for Defendants' unlawful conduct;

2. Awarding future income to Plaintiff in an amount to be proven at trial, representing all loss of future earnings, including reasonable and expected increases, loss of retirement income, and all other benefits he would have expected to earn during his entire lifetime had it not been for Defendants' unlawful discrimination, or in the alternative, ordering reinstatement to his former position;

3. Awarding liquidated damages to Plaintiff under the FMLA equal to the amount of lost wages and benefits;

4. Awarding Plaintiff compensatory damages for mental and emotional distress, pain and suffering, humiliation, embarrassment, and injury to his reputation in an amount to be proven at trial;

5. Awarding Plaintiff punitive damages under state and city law to punish Defendants for their willful, wanton, and malicious conduct and to deter similar conduct in the future;

6. Awarding Plaintiff civil penalties and civil fines under NYCHRL as provided by law;

7. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of this action, as authorized by the FMLA, Section 1981, and NYCHRL;

8. Awarding Plaintiff pre-judgment and post-judgment interest at the maximum rate allowed by law;

9. Awarding appropriate equitable relief, including an injunction requiring Defendants to comply with the FMLA and anti-discrimination laws;

10. Awarding all relief, remedies, and damages available to Plaintiff under the law; and

11. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
January 5, 2026

**MIZRAHI KROUB LLP**

*Louis M. Leon*

Louis M. Leon, Esq.
*Attorneys for Plaintiff*
225 Broadway, 39th floor
New York, New York 10007
Tel: (212) 595-6200
Email: LLeon@mizrahikroub.com